## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| **STATE OF MISSOURI, ex rel.** | ) | |
| **Attorney General Chris Koster,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.:** |
| | ) | |
| **AUTOMATED PROFESSIONAL** | ) | **Division:** |
| **MARKETING, LLC;** | ) | |
| | ) | |
| **Serve Registered Agent:** | ) | |
| **Louis H. Scherb** | ) | |
| **234 Waukegan Road** | ) | |
| **Glenview, IL 60025** | ) | |
| | ) | |
| **SAFETY PUBLICATIONS, INC.;** | ) | |
| | ) | |
| **Serve Registered Agent:** | ) | |
| **Arthur D. Olivera** | ) | |
| **1360 Landmeier Road** | ) | |
| **Elk Grove Village, IL 60007** | ) | |
| | ) | |
| **Adam Herdman,** | ) | |
| **an individual;** | ) | |
| | ) | |
| **Serve At:** | ) | |
| **507 Regan Drive** | ) | |
| **East Dundee, IL 60118** | ) | |
| | ) | |
| **Arthur D. Olivera,** | ) | |
| **an individual;** | ) | |
| | ) | |
| **Serve At:** | ) | |
| **1560 Cumberland Parkway** | ) | |
| **Algonquin, IL 60102** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PETITION FOR PRELIMINARY AND PERMANENT
<u>INJUNCTIONS, CIVIL PENALTIES, AND OTHER COURT ORDERS</u>

Plaintiff, the State of Missouri, at the relation of Missouri Attorney General Chris Koster ("Plaintiff"), brings this Petition for Preliminary and Permanent Injunctions, Civil Penalties, Any Penalty Authorized Under Applicable Law, and Other Court Orders, against Defendants Automated Professional Marketing, LLC; Safety Publications, Inc.; Adam Herdman, an individual; and Arthur Olivera, an individual, upon information and belief, states as follows:

## <u>INTRODUCTION</u>

1.      The State of Missouri, at the relation of Missouri Attorney General Chris Koster, the chief legal officer of the State of Missouri, brings this Complaint pursuant to the Telemarketing Sales Rule, 16 C.F.R. Part 310 (the "TSR"),  the Telephone Consumer Protection Act, 47 U.S.C. § 227 (inclusive of its rules found at 47 C.F.R. § 64.1200 *et seq.*) (the "TCPA"), and the Missouri No-Call Law, §§ 407.1090, RSMo., *et seq.*, and the Missouri Merchandising Practices Act, §407.020, RSMo., *et seq.,* against Defendants Automated Professional Marketing, LLC; Safety Publications, Inc.; Adam Herdman; and Arthur Olivera, for civil penalties, permanent injunctions, and other equitable relief.

## JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction over this action

pursuant to 28 U.S.C. §§ 1331 and 1337(a), the TCPA, and the TSR. This

Court has supplemental jurisdiction over Plaintiff's state-law claims

pursuant to 28 U.S.C. § 1367.

3.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2), which

provides that a civil action may be brought in any "judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred,

or a substantial part of property that is the subject of the action is situated."

4.     A substantial portion of the events giving rise to the claims

alleged herein occurred within the Eastern District of Missouri.

5.     Divisional venue is proper under E.D. Mo. L.R. 3-2.07(B) because

many of the events alleged herein occurred in St. Louis, Missouri.

## PARTIES

6.     Chris Koster is the duly elected, qualified, and acting Attorney

General of the State of Missouri, and brings this action in his official capacity

pursuant to Chapter 407, RSMo 2013[1], and on behalf of the State of Missouri,

as *parens patriae*, pursuant to authority found in the Telemarketing Act, 15

U.S.C. § 6103(a), and 16 C.F.R. § 310.7(a).

---

[1] All references are to Missouri Revised Statutes 2013, unless otherwise noted.  Where a citation gives a supplement year—*e.g.* "(Supp. 2011)"—the citation is to the version of the statute that appears in the corresponding supplementary version of the Missouri Revised Statutes, and, where relevant, to identical versions published in previous supplements.

7.     Automated Professional Marketing, LLC, is an active Illinois corporation that transacts business in St. Louis, Missouri, among other places.  Its registered agent is Louis H. Scherb, 234 Waukegan Road, Glenview, IL 60025.

8.     Defendant Safety Publications, Inc. is an active Illinois corporation that transacts business in St. Louis, Missouri, among other places.  Its registered agent is Arthur D. Olivera, 1360 Landmeier Road, Elk Grove Village, IL 60007.

9.     Defendant Adam Herdman is a natural person who resides at 507 Regan Drive, East Dundee, IL 60118, and is being sued in his individual capacity.  Defendant Herdman is the Co-Owner-Operator of Automated Professional Marketing, LLC, and Safety Publications, Inc.  Defendant Herdman had direct control over the day-to-day operations of Defendants Automated Professional Marketing, LLC, and Safety Publications, Inc., and is individually responsible for the violations alleged herein.

10.     Defendant Arthur Olivera is a natural person who resides at 1560 Cumberland Parkway, Algonquin, IL 60102, and is being sued in his individual capacity.  Defendant Olivera is the Co-Owner-Operator of Automated Professional Marketing, LLC, and Safety Publications, Inc. Defendant Olivera had direct control over the day-to-day operations of Defendants Automated Professional Marketing, LLC, and Safety

Publications, Inc., and is individually responsible for the violations alleged herein.

11.    Defendants, Automated Professional Marketing, LLC; Safety Publications, Inc.; Adam Herdman; and Arthur Olivera (collectively "Defendants") have done business within the State of Missouri by soliciting customers for charitable contributions and have engaged in the acts, practices, methods, uses, and conduct described below that violate 47 U.S.C. §227,  16 C.F.R. Part 310, and §407.1098, RSMo.

12.    Any acts, practices, methods, uses, solicitations, or conduct of the Defendants alleged in this petition include the acts, practices, methods, uses, solicitations, or conduct of Defendants' employees, agents, or other representatives acting under their direction, control, or authority.

## COMMERCE

13.    At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as that term is defined in 15 U.S.C. § 44.

## THE TELEMARKETING SALES RULE

14.    Congress directed the Federal Trade Commission (FTC) to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. The

FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F. R. 310.

15.    Pursuant to the TSR, a "charitable contribution" means any donation or gift of money or any other thing of value. 16 C.F.R. 310.2(f).

16.    Pursuant to the TSR, a "donor" means any person solicited to make a charitable contribution. 16 C.F.R. 310.2(n).

17.    Pursuant to the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. 310.2(v).

18.    Pursuant to the TSR, "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. 310.2(cc).

19.    The TSR prohibits telemarketers from causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number. 16 C.F.R. § 310.4(b)(1)(i).

20.    The TSR prohibits telemarketers from denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls.  16 C.F.R. § 310.4(b)(1) (ii)

6

21.    The TSR further requires that telemarketers comply with a charity-specific "do-not-call list" and refrain from calling a person who has previously asked not to be called by a specific charity. 16 C.F.R. § 310.4(b)(1)(iii)(A).

22.    The TSR prohibits persons calling for charitable donations to abandon any outbound call. An outbound telephone call is "abandoned" if a person answers the call and the telemarketer does not connect the call to a sales representative within two (2) seconds of the persons completed greeting. 16 C.F.R. § 310.4(b)(1)(iv).

23.     A violation of the TSR constitutes an "unfair or deceptive act or practice" in or affecting commerce.  15 U.S.C. §§ 45(a), 57a(d)(3), 6102(c).

## THE TELEPHONE CONSUMER PROTECTION ACT

24.    The TCPA was designed to prevent the telephone calls like the ones described within this Complaint, and to protect the privacy of citizens like the Missouri consumers described herein. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes –prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

25.    The TPCA prohibits, *inter alia¸* telemarketing calls to cellular phones as well as calls made using an automatic dialer system:

        It shall be unlawful for any person within the United States –

(A)    to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

(B)    to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes[.]

47 U.S.C. § 227(b)(1).

26.    47 U.S.C. § 227(b)(3) creates a right of action for a person or entity to seek both injunctive relief and statutory damages in the amount of $500.00 for each violation of the TCPA.

27.    47 U.S.C. 227(b)(3)(C) allows the Court, upon a finding that a defendant willfully and/or knowingly violated the TCPA, to award treble damages for each violation of the TCPA.

28.    All acts attributed to Defendants in this Complaint shall also be deemed to refer to acts by any agent, associate, affiliate, subsidiary or joint venturer of Defendants or any act taken by any person, as defined in 47 U.S.C. § 153, on behalf of or for the benefit of Defendants.

29.    Violations of the TCPA result in liability, even if the violations were the result of negligence.

## THE MISSOURI NO-CALL LAW

27.    Section 407.1098.1, RSMo., provides:

No person or entity shall make or cause to be made any telephone
solicitation to the telephone line of any residential subscriber in
this state who has given notice to the attorney general, in
accordance with rules promulgated pursuant to section 407.1101
of such subscriber's objection to receiving telephone solicitations.

28.    Section 407.1107, RSMo., provides, in pertinent part:

1.    The attorney general may initiate proceedings relating to a
knowing or threatened knowing violation of section 407.1098 or
407.1104.  Such proceedings may include, without limitation, an
injunction, a civil penalty up to a maximum of five thousand
dollars for each knowing violation and additional relief in any
court of competent jurisdiction.  The attorney general may issue
investigative demands, issue subpoenas, administer oaths and
conduct hearings in the course of investigating a violation of
section 407.1098 or 407.1104.

2.    In addition to the penalties provided in subsection 1 of this
section, any person or entity that violates section 407.1104 shall
be subject to all penalties, remedies and procedures provided in
sections 407.010 to 407.130.  The remedies available in this
section are cumulative and in addition to any other remedies
available by law.

29.    A "residential subscriber" is defined as, "a person who has

subscribed to residential telephone service from a local exchange company or

the other persons living or residing with such person." § 407.1095(2), RSMo.

30.    ADAD equipment, also known as "automatic dialing and

announcing device" is "any device or system of devices which is used, whether

alone or in conjunction with other equipment, for the purposes of

automatically selecting or dialing telephone numbers and disseminating

recorded messages to the numbers so selected or dialed."  15 CSR 60-

13.010(2)(A) (2001).[2]

31.    A "telephone solicitation" is defined as "any voice communication

over a telephone line from a live operator, through the use of ADAD

equipment or by other means for the purpose of encouraging the purchase or

rental of, or investment in, property, goods or services…" § 407.1095(3),

RSMo.

32.    Telephone solicitations made by or on behalf of an entity

organized pursuant to Chapter 501(c)(3) of the United Sates Internal

Revenue Code, while such entity is engaged in fund-raising to support the

charitable purpose for which the entity was established, must have a bona

fide member of such organization make the voice communication.

§ 407.1095(3)(c), RSMo.

### THE MISSOURI MERCHANDISING PRACTICES ACT

33.    Section 407.020, RSMo., prohibits the act, use or employment of

any deception, fraud, false pretense, false promise, misrepresentation, unfair

practice or the concealment, suppression, or omission of any material fact in

---

[2] The Attorney General is statutorily empowered pursuant to § 407.1101.2 to promulgate
rules and regulations governing the establishment of the No-Call database as he deems
necessary and appropriate to fully implement the provisions of § 407.1095 to 407.1110.

connection with the sale or advertisement of any merchandise in trade or commerce.

34.     Specifically, § 407.020, RSMo., provides:

> 1.     The act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose, as defined in section 407.453, in or from the state of Missouri, is declared to be an unlawful practice.
>
> ***
> Any act, use or employment declared unlawful by this subsection violates this subsection whether committed before, during or after the sale, advertisement or solicitation.

35.     State regulation 15 C.S.R. § 60.8.020 defines an "unfair practice" as:

> (1)     An unfair practice is any practice which—
>
> (A)     Either--
>     1.     Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or
>     2.     Is unethical, oppressive or unscrupulous; and
> (B)     Presents a risk of, or causes, substantial injury to consumers.
>
> (2)     Proof of deception, fraud, or misrepresentation is not required to prove unfair practices as used in section 407.020.1., RSMo. (See *Federal Trade Commission v. Sperry and Hutchinson Co.*, 405 U.S. 233, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972); *Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (N.C. 1981); see also, Restatement, Second, Contracts, sections 364 and 365).

36.     State regulation 15 C.S.R. § 9.070(1) defines a misrepresentation

as:

> (1)     A misrepresentation is an assertion that is not in accord with the facts (see Restatement, Second, Contracts, section 159;*Packard v. K C One, Inc.*, 727 SW2d 435 (Mo.App., W.D. 1987)).
>
> (2)     Reliance, knowledge that the assertion is false or misleading, intent to defraud, intent that the consumer rely upon the assertion, or any other capable mental state such as recklessness or negligence, are not elements of misrepresentation as used in section 407.020.1, RSMo. (see *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 SW2d 362 (Mo.App., W.D. 1973); State ex rel.*Ashcroft v. Marketing Unlimited*, 613 SW2d 440 (Mo.App., E.D. 1981); *State ex rel. Webster v. Areaco Investment Co.*, 736 SW2d 638 (Mo.App., E.D. 1988))."

37.     State regulation 15 C.S.R. § 9.020(1) defines deception as:

> (1)     Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression.
>
> (2)     Reliance, actual deception, knowledge of deception, intent to mislead or deceive, or any other culpable mental state such as recklessness or negligence, are not elements of deception as used in section 407.020.1., RSMo (see *State ex rel. Danforth v. Independence Dodge, Inc.*, 494 SW2d 362 (Mo. App., W.D. 1973); *State ex rel. Ashcroft v. Marketing Unlimited*, 613 SW2d 440 (Mo. App., E.D. 1981); *State ex rel. Webster v. Areaco Investment Co.*, 756 SW2d 633 (Mo. App., E.D. 1988)). Deception may occur in securing the first contact with a consumer and is not cured even though the true facts or nature of the advertisement or offer for sale are subsequently disclosed. *Exposition Press, Inc. v. F.T.C.*, 295 F.2d 869 (2d Cir. 1961).

38.     State regulation 15 C.S.R. § 9.040(1) defines fraud as:

(1)     Fraud includes any acts, omissions or artifices which involve falsehood, deception, trickery, breach of legal or equitable duty, trust, or confidence, and are injurious to another or by which an undue or unconscientious advantage over another is obtained.

(2)     Fraud, as used in section 407.020.1., RSMo is not limited to common law fraud or deceit and is not limited to finite rules, but extends to the infinite variations of human invention (see *Howard v. Scott*, 225 Mo 685, 125 SW 1158 (1910); *Skidmore v. Back*, 512 SW2d 223 (Mo.App. S.D. 1974); *United States v. Bishop*, 825 F.2d 1278 (8th Cir. 1987); *State v. Shaw*, 847 S.W.2d 768 (Mo. banc 1993)).

39.     Section 407.100.1-3, RSMo., provides:

1.     Whenever it appears to the attorney general that a person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, the attorney general may seek and obtain, in an action in a circuit court, an injunction prohibiting such person from continuing such methods, acts, uses, practices, or solicitations, or any combination thereof, or engaging therein, or doing anything in furtherance thereof.

2.     In any action under subsection 1 of this section, and pursuant to the provisions of the Missouri Rules of Civil Procedure, the attorney general may seek and obtain temporary restraining orders, preliminary injunctions, temporary receivers, and the sequestering of any funds or accounts if the court finds that funds or property may be hidden or removed from the state or that such orders or injunctions are otherwise necessary.

3.     If the court finds that the person has engaged in, is engaging in, or is about to engage in any method, act, use, practice or solicitation, or any combination thereof, declared to be unlawful by this chapter, it may make such orders or judgments as may be necessary to prevent such person from employing or

continuing to employ, or to prevent the recurrence of, any prohibited methods, acts, uses, practices or solicitations, or any combination thereof, declared to be unlawful by this chapter.

40.     Section 407.010(6), RSMo., defines **"**sale" as "any sale, lease, offer for sale or lease, or attempt to sell or lease merchandise for cash or on credit."

41.     Section 407.010(1), RSMo., defines "advertisement" as "the attempt by publication, dissemination, solicitation, circulation, or any other means to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in any merchandise."

42.     Section 407.010(4), RSMo., defines  "merchandise" as "any objects, wares, goods, commodities, intangibles, real estate or services."

43.     Section 407.010(7), RSMo., defines "trade" or "commerce" as "the advertising, offering for sale, sale, or distribution, or any combination thereof, of any services and any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value wherever situated. The terms 'trade' and 'commerce' include any trade or commerce directly or indirectly affecting the people of this state."

44.     Section 407.469(2), RSMo., provides:

> Whenever a solicitation of funds on behalf of a charitable organization is undertaken by a professional fund-raiser, the professional fund-raiser shall disclose that fact to prospective contributors.

45.     Section 407.453(4), RSMo., defines "professional fundraiser" as:

"any person, as defined in section 407.010, who is retained under contract or otherwise compensated by or on behalf of a charitable organization primarily for the purpose of soliciting funds. The term 'professional fund-raiser' shall not include any bona fide employee of a charitable organization who receives regular compensation and is not primarily employed for the purpose of soliciting funds."

## FACTUAL ALLEGATIONS

46.     Defendants operate a telemarketing business that solicits donations for charitable organizations in the state of Missouri.

47.     Defendants employ a team of telemarketers within their facility to solicit contributions on behalf of their charitable organization clients.

48.     During just a two-month period from September 2014 through October 2014, Defendants made more than 25,000 calls to Missouri residents registered on the Missouri No-Call list.

49.     Consumers in Missouri reported receiving repeated phone calls, sometimes 2-3 times per day from various phone numbers with different names displayed on their caller identification system. Most of the names displayed were BCS Foundation, Dis Vets, BC Survivors Disabled Vets or Disa PS.

50.     Often the consumers who answered the Defendants' phone calls were not connected with a sales representative within two seconds of the completed greeting, but were greeted with silence on the line for several

seconds.  Upon connecting with the caller, consumers often hear loud background noise on the call.

51.    Often Defendants' phone calls would ring two-to-three times and then disconnect before the consumer could answer.

52.    Many of the consumers who received Defendants telemarketing calls asked Defendants to stop calling.  Despite these requests, Defendants continued to make further telemarketing calls to these consumers. Representative examples include, but are not limited to:

a.    On October 22, 2013, consumer M.P. received a call from Defendants, after having received daily calls from the same phone number. M.P. previously had asked for the caller to stop contacting him.

b.    On September 29, 2013, consumer C.D. received a call from Defendants, after receiving calls every week over the course of one month. Defendants did not leave messages, and C.D. describes the repeated calls as harassing. C.D. received another call from Defendants on October 1, 2013. When C.D. told the caller to put her name on the telemarketer's do-not-call list, the caller told her they are a non-profit and they didn't have to have a do-not-call list.

c.    On August 12, 2013, consumer K.C. received a call from

16

Defendants and told the caller not call him again. K.C.

received another call from Defendants on August 13, 2013.

53.     Defendants used manipulative sales techniques, through

repeated, harassing, unsolicited telephone calls which a reasonable consumer

would consider an unfair practice, coercive or abusive of such consumers'

right to privacy.

## COUNT I–TELEPHONE SALES RULE VIOLATIONS

54.     Plaintiff incorporates all of the allegations contained in

paragraphs 1 through 53.

55.     In numerous instances Defendants, in connection with

telemarketing, initiated outbound telephone calls to consumers who

previously stated they did not wish to receive such calls made by the

telemarketer whose charitable solicitations were in violation of the TSR, 16

C.F.R. § 310.4(b)(1)(iii)(A).

56.     The Defendants caused the telephone to ring in a manner that

was continuous and repeated with the intent to annoy, abuse, or harass

consumers.

57.     The Defendants caused the interference or denial of a person's

right to be placed on a registry of names and/or telephone numbers that did

not wish to receive outbound phone calls.

58.     The Defendants caused the abandonment of outbound telephone

calls.

59.    The toll-free telephone number the Defendants provided to consumers did not connect to an automated message that identified the charitable organization that the call was being made on behalf of or that the call was being made to solicit a charitable contribution.

60.    Although Defendants have a reasonable period of time to process do-not-call requests, the amount of time and the number of calls placed to consumers after they asked not to be called was not reasonable.

61.    Consumers have suffered and will continue to suffer substantial injury as a result of the Defendants violations of the TSR. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers and harm the public interest.

## COUNT II – TELEPHONE CONSUMER PROTECTION ACT VIOLATIONS

62.    Plaintiff incorporates all of the allegations contained in paragraphs 1 through 61.

63.    The Defendants calls constituted calls that were not made for emergency purposes as defined in 47 U.S.C. § 227(b)(1)(A)(i).

64.    The Defendants made calls using an automatic telephone dialing system to telephone numbers assigned to a cellular telephone service.

18

65.     The Defendants made calls to residential telephones lines using an automatic telephone dialing system or an artificial or prerecorded voice to deliver a message without the prior consent of the called party.

66.     The Defendants willfully and knowingly made the above violations of 47 U.S.C. § 227.

## COUNT III – MISSOURI NO-CALL LAW VIOLATIONS

67.     Plaintiff incorporates all of the allegations contained in paragraphs 1 through 66.

68.     Beginning on at least August 12, 2013, and continuing to the present, Defendants have knowingly engaged in a pattern of outbound calls resulting in numerous violations of Missouri's No-Call Law by making telephone solicitations to the telephone lines of residential subscribers in the State of Missouri who have given notice to the Attorney General of the subscribers' objections to receiving telephone solicitations and were placed on Missouri's Telemarketing No-Call List.

69.     Specifically, Defendants have made telephone solicitations to residential subscribers in the State of Missouri in an attempt to solicit charitable contributions.

70.     Residential subscribers, after having given notice to the Attorney General of their objections to receiving telephone solicitations, received telephone solicitations to their residential telephone lines from the

Defendants and captured the telephone numbers associated with the Defendants on their caller identification screen, voice-mail recordings, *69 call return service, or by speaking with Defendants.

71.     The telephone numbers obtained by residents were used by the Defendants to make their outbound calls.  The telephone solicitations referred to in preceding paragraphs were made to natural persons who, for primarily personal and familial use, have subscribed to residential telephone service, wireless service or similar service, or other persons living or residing with such persons.

72.     Defendants' pattern of telephone solicitations were made to residential subscribers who have given notice to the Attorney General that they objected to receiving telephone solicitations.

73.     A copy of the No-Call Database was available to the Defendants, but they did not obtain it prior to making the outbound calls.

74.     The telephone solicitations referenced in the preceding paragraphs were voice communications over a telephone line, through the use of ADAD equipment or by other means for the purpose of soliciting charitable contributions.

75.     The voice communications were not made by a bona fide member of an entity organized pursuant to 26 U.S.C. § 501(c)(3).

## COUNT IV – MISSOURI MERCHANDISING PRACTICES ACT VIOLATIONS

76.     Plaintiff incorporates all of the allegations contained in paragraphs 1 through 75.

77.     Defendants made or caused to be made outbound calls in which telemarketers followed a script. The script directed the telemarketers to tell consumers that "[a]ll checks are made directly payable to the [charity] so you know exactly where your money is going" if asked about the legitimacy of the organization.

78.     Despite the representation that consumers would know exactly where their money was going, contracts signed by Defendants and the charity organizations demonstrate otherwise. The contracts include a term in which Defendants would retain eighty to eighty-six percent (80-86%) of the gross proceeds actually received, while the charity would receive fourteen to twenty percent (14-20%) of the gross proceeds.

79.     Defendants' misrepresentation of the contract or contract term when soliciting charitable donations from Missouri consumers amounts to deception, fraud, misrepresentation, unfair practice and omission of a material fact and is an unlawful practice under Missouri law.

## RELIEF

A.    Finding that Defendants have violated the provisions the TSR, the TCPA, and § 407.1098, RSMo.

B.    Issuing preliminary and permanent injunctions, pursuant to § 407.100, RSMo., to prevent Defendants from continuing to violate the TSR, the TCPA and the Missouri No-Call Law.

C.    Requiring Defendants, pursuant to 15 U.S.C. § 45(m)(1)(A) and 16 C.F.R. § 1.98(d), to pay to the State a civil penalty of up to sixteen thousand dollars ($16,000) for each violation of the TSR.

D.    Requiring Defendants, pursuant to 47 U.S.C. § 227(b)(3)(B), to pay the State a minimum of $500 in civil penalties for each violation of the TCPA. Should the Court determine that Defendants' conduct was knowing and willful, it may, under 47 U.S.C. § 227(b)(3)(C) and 47 U.S.C. § 227(b)(3)(C), treble the amount of civil penalties that Defendants must pay for each violation of the TCPA.

E.    Requiring Defendants, pursuant to § 407.1107, RSMo., to pay to the State a civil penalty up to five thousand dollars ($5,000) for each and every violation of § 407.1098, RSMo., that the Court finds to have occurred.

F.    Requiring Defendants to pay all court, investigative, and prosecution costs of this case.

G.    Granting any additional relief that is just or proper.

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

*/s/ Mary D. Morris*
Mary D. Morris, # 60921MO
P.O. Box 861
St. Louis, MO 63188
(314) 340-7889 Fax: (314) 340-7981
Mary.Morris@ago.mo.gov